## BURGESS BATTERY CO. v. COAST INSULATING CORPORATION.

### No. 9410.

Circuit Court of Appeals, Ninth Circuit.

Sept. 27, 1940.

Rehearing Denied Oct. 31, 1940.

Lyon & Lyon, of Los Angeles, Cal. (Reginald E. Caughey, of Los Angeles, Cal., and Daniel V. Mahoney, of New York City, of counsel), for appellant.

Collins Mason and Julius V. Patrosso, both of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

This was an action by C. F. Burgess Laboratories, Incorporated (hereafter called Laboratories), against appellee, Coast Insulating Corporation, for infringement of patent No. 1,726,500. Defenses were (1) that the patent was invalid and (2) that, if valid, it was not infringed. The complaint did not state which of the 25 claims of the patent were infringed, but the case was tried below and argued here upon the theory that claims 1, 3, 4, 5, 6, 8, 10, 11, 14, 16, 17 and 23 were the only claims involved. Trial was by the court sitting without a jury. The court held that claims 1, 3, 5, 6, 9, 10, 11 and 14 were invalid, held that claims 16, 17 and 23 were not infringed, held that claim 4 was valid and infringed, and entered judgment accordingly. From so much of the judgment as relates to claims 1, 3, 5, 6, 8, 10, 11, 14, 16, 17 and 23, this appeal is prosecuted.

The patent was applied for by Ralph F. Norris on February 25, 1929, and was issued to Laboratories (Norris's assignee) on August 27, 1929.[1] It is for claimed improvements in sound-deadening construction. As stated in the specification: "Many buildings are found to have poor acoustics after being constructed. * * * It becomes necessary, therefore, to apply sound-absorbing material to the walls and ceilings. * * * The walls and ceilings of buildings may also be treated acoustically during the initial construction." For this purpose, blocks or slabs of sound-absorbing material are used. Such blocks or slabs, hereafter called sound-deadeners, may and often do comprise (1) a backing made of material having a high degree of sound-absorbing efficiency and (2) a perforated facing made of material having a low degree of sound-absorbing efficiency. Such sound-deadeners were known and used by others in this country long prior to Norris's alleged invention.

Claims 1, 3, 5, 6, 8, 10, 11 and 14 of the patent—the claims which the District Court held invalid—read as follows:

"1. In the combination of sound-absorbing material and a facing therefor, a thin sheet of perforated metal forming such facing, the ratio of the unperforated area of said sheet to the openings therein being such as to expose an apparently substantially continuous surface to the sound waves."

"3. In the combination of sound-absorbing material of high efficiency and means for confining and concealing the same, a thin layer of self-sustaining, non-sound-absorbing[2] perforated material constituting such means, the openings therein being widely distributed over the area exposed to the sound waves and small enough to substantially conceal the sound-absorbing material."

"5. Sound-absorbing means comprising, in combination, sound-absorbing material and a thin, stiff member contiguous thereto with a plurality of openings therein, the ratio of openings to the area of said member being such as to expose an apparently substantially continuous surface to the sound waves.

"6. A sound-absorbing structure comprising sound-absorbing material and a thin, self-sustaining material concealing the same with a multiplicity of small openings therethrough of average dimensions greater than the thickness of said self-sustaining material."

"8. Sound-absorbing means comprising, in combination, thick porous material having high capacity for sound absorption, and a thin, dense, perforated material having less sound-absorbing capacity, the spacing of the openings in said perforated material, as specified herein, bearing such relation to the length of the sound waves passing therethrough as to provide a combined sound-absorbing efficiency as great as that of said high capacity sound-absorbing material."

"10. The combination with sound-absorbing material having an efficiency in

---

[1] While this action was pending in the District Court, Laboratories assigned the patent to Burgess Battery Company, a Wisconsin corporation, which thereupon was joined as plaintiff. After the appeal was taken, the Wisconsin corporation assigned the patent to Burgess Battery Company, a Delaware corporation, which thereupon was substituted as appellant.

[2] The difference between sound-absorbing material and so-called non-sound-absorbing material is one of degree only, for all materials are in some degree absorbers, in some degree reflectors of sound.

excess of 70%, of thin, dense, foraminous [perforated] material having an efficiency of less than 25%, forming a facing therefor, the openings in said dense material being spaced, as specified herein, to permit the transmission of sound waves in such manner as to result in an efficiency in the combined materials in excess of that of said sound-absorbing material.

"11. Means for deadening sound reflected from a hard surface, comprising a layer of sound-absorbing material between the source of sound and said hard surface, and perforated sheet metal adjacent said sound-absorbing material between it and said sound source, the openings in said sheet metal being substantially uniformly distributed over its surface and having a total area less than the unperforated area of said metal."

"14. A sound absorbing structure as in claim 6, in which the openings cover about .4% to 35% of the total area."

Each of these claims describes a sound-deadener comprising two elements: (1) A backing made of material having a high degree of sound-absorbing efficiency and (2) a perforated facing made of material having a low degree of sound-absorbing efficiency. Earlier sound-deadeners comprising these elements are described in patent No. 1,385,741 issued to James W. Dillon on July 26, 1921, and patent No. 1,660,745 issued to John H. Delaney on February 28, 1928.[3]

In Dillon's sound-deadener, the backing is made of "unwoven material, such as felt, cotton or similar material possessing sound-absorbing qualities." In Delaney's sound-deadener, the backing is made of "sound-absorbing material which may be asbestos wool, loose pumice, hair, cork or substances having like sound-absorbing properties." In Norris's sound-deadener, the backing is made of one or more materials described in his specification as "suitable sound absorbers such as balsam-wool, hairfelt, porous ceramic products and similar materials." Thus, in each of these sound-deadeners—Dillon's, Delaney's and Norris's—the backing is made of material having a high degree of sound-absorbing efficiency.

In Dillon's sound-deadener, the facing[4] is a "woven membrane" or, as his claims describe it, a "fabric membrane." Such a membrane has, obviously, a lower degree of sound-absorbing efficiency than the "unwoven material" used as its backing. In Delaney's sound-deadener, the facing is made of "any suitable material or materials such for instance as plaster, cement, fibrous material, wood, terra cotta or in some instances, metal." In Norris's sound-deadener, the facing[5] may be a "sheet metal membrane," but, as stated in his specification, "Vulcanized fibre sheets, bakelized sheets, veneered wood sheets, and the like may be used instead of metal." Thus, in each of these sound-deadeners—Dillon's, Delaney's and Norris's—the facing is or may be made of material having a low degree of sound-absorbing efficiency.

Norris's was not, as appellant contends, the first disclosure of a sound-deadener having a rigid facing or a facing made of what he and appellant call non-sound-absorbing material.[6] For Delaney's disclosure preceded Norris's by two years and seven months; and Delaney's facing, when made, as it may be, of metal, is no less rigid and no more sound-absorbing than Norris's facing.

Norris's sound-deadener is not differentiated from Dillon's or Delaney's by the fact that, in Norris's, the ratio of the unperforated area of the facing to the perforations therein is "such as to expose an apparently substantially continuous surface to the sound waves" (claim 1); or by the fact that the perforations are "widely distributed over the area exposed to the sound waves and small enough to substantially conceal [the backing]" (claim 3); or by the fact that the ratio of the perforations to the area of the facing is "such as to expose an apparently substantially continuous surface to the sound waves" (claim 5); or by the fact that the perforations are "of average dimensions greater than the thickness of [the facing]" (claims 6 and 14); or by the fact that the spacing of the perforations bears "such relation to the length of the sound waves passing therethrough as to provide a sound-absorbing efficiency as great as that of [the backing]" (claim 8); or by the fact

---

[3] The Delaney patent was applied for on June 30, 1926.

[4] Dillon calls his facing a membrane.

[5] Norris uses the terms "facing" and "membrane" interchangeably.

[6] Meaning, evidently, material having a low degree of sound-absorbing efficiency. See footnote 2.

that the backing has a sound-absorbing efficiency in excess of 70%, the facing has a sound-absorbing efficiency of less than 25%, and the perforations are so spaced as "to permit the transmission of sound waves in such manner as to result in an efficiency in the combined [backing and facing] in excess of that of [the backing]" (claim 10); or by the fact that the perforations in the facing are "substantially uniformly distributed over its surface and have a total area less than the unperforated area of [the facing]" (claim 11); or by the fact that the perforations "cover about .4% to 35% of the total area" (claim 14). For the perforated facings described by Dillon and Delaney include facings perforated in the manner and to the extent specified in each of these claims. They also include facings having a sound-absorbing efficiency of less than 25%. And the backings described by Dillon and Delaney include backings having a sound-absorbing efficiency in excess of 70%.

True, Dillon does not, nor does Delaney, in describing his facing, state the exact size of the perforations therein, the exact distance between the perforations or the exact ratio of perforated to unperforated facing. But neither does Norris. In describing his facing, Norris states that the size and spacing of the perforations therein and the ratio of perforated to unperforated facing are "such" as to produce certain results; but exactly what size, spacing or ratio will produce these results can no more be ascertained from Norris than from Dillon or Delaney.

Claims 16, 17 and 23 of the Norris patent read as follows:

"16. As an article of manufacture, a sheet metal pan having a multiplicity of small perforations therein, of average dimensions greater than the thickness of said sheet metal, and a pad of sound-absorbing material fitting the same, the edges of said pan having means adapted for engagement with a support.

"17. As an article of manufacture, a sheet metal pan having a multiplicity of small perforations therein of average dimensions greater than the thickness of said sheet metal, and sound-absorbing material within the same, the edges of said pan having means adapted for engagement with a support."

"23. In a building structure, the combination with a wall or ceiling surface of a room, of an exposed foraminous [perforated] rigid non-sound-absorbing[7] sheet spaced therefrom, a sound-absorbing material between said sheet and said wall or ceiling surface and concealed by the former, and means for supporting said sheet in said spaced relation and adjacent to said surface, the ratio of the exposed area of the sheet to the openings therein being such as to provide a substantially continuous decoratable surface."

The "means" mentioned in these claims are not described therein, but the specification describes them as including "projecting ears," T-shaped "furring strips" and "toggle bolts." The trial court found, upon ample evidence, that in appellee's structures, alleged to infringe these claims, no such means were employed. The court accordingly held, and properly so, that claims 16, 17 and 23 were not infringed by appellee.

The judgment declares that claims 1, 3, 6, 10 and 11 of the patent are invalid because "too broad and general," and that claims 5, 8 and 14 thereof are invalid because they "do not exclude a facing material that has a definite and material measure of sound absorptions." Instead, we think claims 1, 3, 5, 6, 8, 10, 11 and 14 should be, and they are hereby, declared invalid for lack of novelty.

The judgment is modified accordingly and, as modified, is affirmed.

---

[7] See footnote 2.